UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LYNNETTE W. o/b/o L.L.C.,

Plaintiff,

v.

**DECISION AND ORDER**

19-CV-70S

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

1. Plaintiff Lynnette W.[1] brings this action pursuant to the Social Security Act ("the Act") on behalf of her child, Claimant L.L.C. ("Claimant"), seeking review of the final decision of the Commissioner of Social Security that denied Claimant's application for supplemental security income benefits under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2. Claimant L.L.C. was born on May 21, 2012. Plaintiff protectively filed Claimant's application with the Social Security Administration on August 6, 2014, when L.L.C. was two years old. Plaintiff alleges that Claimant's disability began on May 21, 2013, due to language delay; recurrent ear infection, status post bilateral tube myringotomies; oropharyngeal dysphagia; and asthma. Claimant's applications were denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial and Claimant by initials or as "Claimant".

3. On June 16, 2017, ALJ John Murdock held a video hearing at which Plaintiff and Claimant (represented by counsel) appeared and Plaintiff testified. (R.[2] at 36-56.) At the time of the hearing, Claimant was five years old finishing pre-K in school (R. at 40).

4. The ALJ considered the case *de novo* and, on March 12, 2018, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 17.) Plaintiff filed a response on February 26, 2020 (Docket No. 18), arguing that Defendant made post hoc rationalizations for the ALJ's decision (id. at 2), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's March 12, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A claimant under 18 years of age, such as the Claimant here, is "disabled" under the Social Security Act if he has a medically determinable physical or

mental impairment (or combination of impairments) that result in "marked and severe functional limitations," and the impairment or impairments must have lasted or expect to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C).

9. Under the applicable regulations, the infant claimant must show that he is not working, that he has a "severe" impairment or combination of impairments, and that his impairment or combination of impairments was of listing-level severity, that is met, medically equaled, or functionally equaled the severity of listed impairments, 20 C.F.R. § 416.924. Functional equivalence of limitations, in turn, are evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being, id. § 416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain (not claimed here) constitutes a functional equivalent to a listed impairment, id. § 416.926a(d). Each domain is evaluated on whether the claimant has no limitation, is less than marked, marked, or extreme limitation, id. § 416.926a(b)(1).

10. "Marked" limitation for a domain is when a claimant's impairment(s) "interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities," 20 C.F.R. § 416.926a(e)(2)(i).

11. The plaintiff bears the initial burden of showing that the impairment prevents the claimant from working. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the

existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

12. To determine whether the claimant is suffering from a disability, the ALJ must employ a multi-step inquiry:

> (1) whether the claimant is engaged in substantial gainful activity;
> (2) whether the claimant suffers from a severe impairment;
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations, as assessed for the six domains of infant functioning.

20 C.F.R. § 416.924(a)-(d); see 20 C.F.R. §§ 416.920, 416.972, 416.923, 416.926, 416.926a; see Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972)

13. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date. (R. at 18.) At step two, the ALJ found that Claimant has the following severe impairment: language delay; recurrent ear infections, status post bilateral tube myringotomies; oropharyngeal dysphagia; and asthma. (Id.) At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 19-30.)

14. The ALJ found that Claimant was less than marked limitation in acquiring and using information and had no limitation in the domain of caring for himself (R. at 24-

25, 28-29). The ALJ also found that Claimant had a marked limitation for interacting and relating to others (R. at 26-27).

15. As for the remaining domains (not in dispute here), the ALJ found that Claimant had no limitations in attending and completing tasks or moving about and manipulating objects and a less than marked limitation for the domain of health and physical well-being. (R. at 25-26, 27-28, 29-30.)

16. Accordingly, the ALJ found that Claimant is not disabled. (R. at 30.)

17. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to evaluate Claimant's functioning within the domains of acquiring and using information and caring for himself (Docket No. 13, Pl. Memo. at 10, 13-18, 18-20; see Docket No. 18, Pl. Reply Memo. at 2 (renewing initial arguments)). For the reasons that follow, this argument is unavailing.

18. The ALJ found that Claimant, a five-year-old at the date of decision, had marked limitation for interacting and relating with others. For Claimant to be found disabled, he would need either another domain that was extreme limitation (not claimed here) or a second domain that was marked limitation. If Plaintiff prevails with either domains of acquiring and using information or caring for himself, then the ALJ erred in concluding that Claimant was not disabled.

19. The domain requirements vary as the infant ages. As for Claimant's ability to acquire and use information as an older infant or toddler (one to three years old), Claimant should learn about the world around him, learning how objects go together in different ways, 20 C.F.R. § 416.926a(g)(2)(ii). He should refer to himself and things by pointing and eventually naming (id.). He should form concepts and solve simple problems

through purposeful experimentation and pretend play (id.). He should begin to respond to increasingly complex instructions and questions and produce an increasing number of words and grammatically correct simple sentences and questions (id.; Docket No. 13, Pl. Memo. at 14).

20. An infant of preschool age (three to six years old), Claimant then should begin to learn and use skills that will help learning to read and write and do arithmetic, performing such readiness skills as counting, sorting shapes, coloring, using scissors, using words to ask questions, give answers, follow directions, and describe things, 20 C.F.R. § 416.926a(g)(2)(iii) (id.).

21. For the domain for acquiring and using information, Plaintiff points out that Claimant did not use "I" or "me" to refer to himself, he could not listen to a five-minute story or follow two-step instructions, although he could follow single step instructions, play pretend with stuff animals, and wave goodbye (R. at 25, 152; Docket No. 13, Pl. Memo. at 13). Although Claimant had moderately delayed adoptive skills, the ALJ found that the Claimant had normal cognitive skills, average range of intelligence, age appropriate pre-academic skills for a near 5-year-old, and intelligence testing revealed that Claimant had average full scale and verbal comprehension scores (R. at 25, 256; Docket No. 13, Pl. Memo. at 13).

22. Noting that Plaintiff had not received any complaints from Claimant's teachers, the ALJ concluded that Claimant was less than marked in this domain (R. at 25; Docket No. 13, Pl. Memo. at 13). Plaintiff distinguishes the lack of teacher complaints because Claimant was only in pre-kindergarten at the time of the hearing (Docket No. 13, Pl. Memo. at 17).

23. Plaintiff counters that Claimant continued to struggle with age-appropriate activities within this domain despite speech therapy (Docket No. 13, Pl. Memo. at 14).

24. Claimant had two standard deviations below the mean for his communication skills, meaning a severe delay and speech production skills and pragmatic/social language found to be developed commensurately with his expressive language, that was greater than 1.5 standard deviations below the mean (Docket No. 13, Pl. Memo. at 15 (citing R. at 267, 379-81, 370-73)). Plaintiff argues that the two standard deviations below the mean shows a marked limitation (id., citing 20 C.F.R. § 416.926a(e)(iii) (defining "marked" limitation for child to age 18)).

25. Defendant argues that substantial evidence supports the ALJ's finding that Claimant was only less than marked limitation for acquiring and using information (Docket No. 17, Def. Memo. at 5-8). Defendant contends that Claimant's auditory comprehension was within functional limits and his expressive communication was mildly limited (id. at 7, citing R. at 352 (Amy Atwater, Speech & Language Evaluation Report)). Defendant, relying upon Social Security regulations, rejects solely relying upon standard deviations to establish marked limitation (id. at 7-8, citing 20 C.F.R. § 416.926a(e)(4)(i)-(iii)).

26. Plaintiff is not solely relying upon the standard deviation to justify marked limitation. She rests upon the moderate or severe delays in expressive language or speech production as well as Claimant's testing (id. at 16 (citing R. at 374-78, 379-81)), but these assessments include the standard deviations.

27. The ALJ here recognized moderate delays in adoptive skills but still normal skill levels in other functions (R. at 25).

28. Therefore, Plaintiff's Motion for Judgment (Docket No. 13) finding that the ALJ erred in the assessment of the Claimant on the domain of acquiring and using information is denied. This Court next considers the domain of caring for self.

29. As for the infant domain of caring for self, the ALJ considers for older infants and toddlers up to age 3 that the infants do more things for themselves and increase this sense of independence and competence in the child's environment, 20 C.F.R. § 416.926a(k)(2)(ii). The child might console himself by carrying a favorite blanket, the child should be learning to cooperate with caregivers when they take care of the child's physical needs and show what the child can do, id. The child also should experiment with independence by showing some degree of contrariness and identity, id. (Docket No. 13, Pl. Memo. at 18).

30. Preschool children ages 3 to 6 for this domain should want to take care of many physical needs by themselves and also try doing some things that the child cannot do fully, 20 C.F.R. § 416.926a(k)(2)(iii) (id.).

31. Under this domain, the ALJ accepted Plaintiff's report that Claimant was able to dress and undress, drink from a cup, and feed himself (R. at 29, 154; Docket No. 13, Pl. Memo. at 18). The ALJ then observed that Claimant did not like brushing his teeth, combing his hair, or cleaning up after himself (R. at 154), but the ALJ found that there was no evidence of Claimant having an inability to perform these tasks (R. at 29; Docket No. 13, Pl. Memo. at 18).

32. In the Function Report submitted by Plaintiff, she also stated that Claimant was impaired in his ability to care for himself by Plaintiff not understanding what Claimant says and Claimant acting out in frustration, sometimes having tantrums (R. at 154).

33. The ALJ concluded that the Claimant had no limitation in the domain of caring for self (R. at 29).

34. Plaintiff now argues that the ALJ missed key factors in finding that Claimant had no limitation in this domain, missing such factors as the ability to maintain a healthy emotional and physical state, satisfying physical and emotional wants and needs in appropriate ways, how well Claimant copes with stress and controlling behaviors that are not good for the child, see 20 C.F.R. § 416.926a(k) (Docket No. 18, Pl. Memo. at 19).

35. Plaintiff testified that Claimant became frustrated with his inability to communicate and be understood and manifested this frustration by hitting his head against the wall or punching his head (R. at 42-44, 44-45; Docket No. 13, Pl. Memo. at 19). She also noted that Claimant made progress (R. at 42) and that he had less frequently hit himself (R. at 44).

36. She now concludes that this frustration and head hitting showed at least a marked limitation in his ability to care for himself rather than the no limitation found by the ALJ (Docket No. 13, Pl. Memo. at 19). She argues that, by not considering Claimant's frustration and self-harm, the ALJ erred in the finding and that this error was not harmless (id.).

37. Plaintiff does not dispute the ALJ's other findings about Claimant's abilities under the caring for himself domain.

38. Claimant's frustration (and resultant self-injury) arises from his inability to communicate, found to be a marked limitation for the domain of interacting with others (R. at 26-27). Plaintiff now contends this also affects his ability to perform self-care. She emphasizes Claimant's speech difficulties (Docket No. 13, Pl. Memo. at 13; citing R. at

267, 379,-81, 370-37), although his speech was considered in the interacting with others domain (R. at 27). Plaintiff did not state the frequency of Claimant's incidents of self-harm and the medical record indicated at most two possible, documented episodes.

39. Review of the medical record indicates two instances of Claimant injuring his head. Only one of them is attributable to self-injury. On Claimant's well child visit to his pediatrician on November 13, 2014, the office noted that Claimant had a knot in the back of his head due to Claimant hitting it (R. at 729-61, 729; Docket No. 13, Pl. Memo. at 19). That medical record also notes treatment for a concussion on June 30, 2014 (R. at 337-49), but Claimant fell from a porch swing (R. at 337).

40. Claimant sought speech therapy from People, Inc. (R. at 988-1014; Docket No. 13, Pl. Memo. at 7). Speech therapists at People, Inc., observed from October 2014 through August 2015 that Claimant's frustration lessened as his speech improved (R. at 988-1014). Claimant improved such that People, Inc. closed its case as he transitioned to special education (R. at 1014; Docket No. 13, Pl. Memo. at 7).

41. If the sole evidence of marked limitation in his ability to care for himself is this frustration and self-harm based upon Plaintiff's testimony, her report in the Function Report, and one medically documented incident in November 2014, the ALJ had substantial evidence to find there was no limitation in this domain. Plaintiff testified that Claimant showed progress, was less frustrated, and presumably had fewer instances of self-harm.

42. Therefore, Plaintiff's Motion for Judgment (Docket No. 13) contending that the ALJ erred in finding limitation for the domain of caring for self is denied.

43. Plaintiff needed to establish either an extreme limitation (not claimed here) or a second domain that was marked limitation in order to find Claimant disabled. Plaintiff could not find Claimant's ability to care for himself as a marked limitation. Therefore, Plaintiff's Motion for Judgment (Docket No. 13) is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: June 17, 2020
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge